Hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now open. The Honorable George Bridges presiding. Your Honors, the second case on the docket this morning is 2-19-0044. The people of the state of Illinois, Plaintiff Appalee v. Alexander W. Mendez, Defendant Appellant. Arguing for the Appellant, Daniel Mallon. Arguing for the Appalee, Victoria Joseph. Good morning. Are both sides ready to proceed? Yes, Your Honor. Yes, Your Honor. Very well, Ms. Mallon, you may proceed. Thank you very much. May it please the Court, again, my name is Daniel Mallon, Counsel. I'm with the Office of the State Appellate Defender, and I represent the Appellant, Mr. Alexander Mendez. I plan on focusing my argument today on the instructional error that we raised in our briefs, because there was no evidence presented at this trial to support an accountability instruction. That means Mr. Mendez should receive a new trial. The law is undisputed and clear. In some evidence presented that my client, either before or during the commission of the shooting that occurred in this case, and with the intent to promote or facilitate this shooting, solicited, aided, abetted, agreed, or attempted to aid another person in the planning or commission of the offense. Mr. Mallon, can I interject a question? Who was Gary McGuire? I believe he was one of the individuals who was, Mr. Jackson testified, was drinking that morning. Wasn't the allegation by the victim that McGuire approached him along with the defendant? They approached him together? I'm sorry? Didn't they approach him together, according to the testimony or evidence? I don't believe the victim identified McGuire as one of the individuals. He didn't identify my client either. I believe the only individual he identified was Jackson. Well, that's the state's argument is that, you know, he was there, the defendant was there with another person. So there was slight evidence to justify the instruction. Well, the state's argument and what the state's theory at trial was that my client was the shooting, where they were drinking, and my client was photographed with the gun. Then they presented Jackson's testimony. And Jackson, of course, pled guilty to this offense, and he pled guilty as an accomplice. And pursuant to that plea agreement, in which he got a few unrelated cases dismissed, and he was tried as a juvenile on this matter, he testified that neither he nor McGuire had the gun. And he testified that my client had the gun immediately before the shooting. He said they walked to an alley to get cigarettes, or they walked to us, they were walking to get cigarettes. And that's when they approached the victim DS in the alley. Jackson knew DS and DS knew Jackson because Jackson was having some sort of disagreement with the victim's brother. You know, I think they were exchanging words on Facebook. So that's how DS recognized Jackson. But again, the DS did not identify anyone else who was with him. So once Jackson was identified, that's when the state, you know, during the course of its investigation, and ultimately entered into the negotiated plea agreement with him, he admitted he was an accomplice, he denied being a shooter. And then the state ultimately presented some evidence that my client had the gun, I think 11 days at his family's apartment, which they found when they executed a search warrant wrapped up in a red sweatshirt. Correct? Yes, correct. So the evidence was clearly sufficient to convict your client as a principal is that your argument but not? No, no, no, Your Honor. I mean, our first issue we I don't believe we don't believe the evidence is sufficient to convict him as the principal. Because you cite you cite ash for the proposition that the testimony of the accomplice must must have an absolute conviction of truth. But in ash, the Supreme Court was was discussing uncorroborated testimony of an accomplice here you have corroborated testimony. Is that correct? I would disagree. I don't I don't think it's corroborated. I think I mean, what is what is the firearm that was used in the commission of the offense recovered from the defendant's home? How is that not corroboration? Well, I would say the unbiased occurrence witnesses, and the victim himself failed to identify my client as the shooter. I mean, as you mentioned, he was pictured wearing a bright red clear Indiana University sweatshirt. It's got a giant IU logo on it. He has a giant neck tattoo you can see in the photos. Yet none of this came out from the victim. The victim was unable to identify my client in a photo array immediately after the shoot in the days following the shooting. He didn't identify him at trial. There was multiple descriptions as to the of the shooter. It changed throughout the couple days. Again, the unbiased occurrence witnesses who saw it, they were unable to identify my client. They also indicated that the shooter was among a group of young black boys. My client is Puerto Rican. He's light skinned Puerto Rican as the photo exhibit show. It was it was dark out. It was in an alley. It was dark. The victim was almost murdered. He was he was very fortunate to survive the shooting, correct? Yes, absolutely. And you're so your argument is that we we must set aside the fact that a shirt which essentially matches the description and the firearm used in the commission of the offense is not corroboration. That's your position. Well, as to the sufficiency argument, I would say that having the firearm before and after is not copper corroboration that my client was the shooter. And it was it's not corroboration of the theory that the state presented at trial that he was the principal shooter. And I think plenty of the witnesses testimony contradict that theory. And as I just mentioned, no one identified the only person that identified my client as being at scene was Mr. Jackson, who, again, favorable plea deal. I mean, Illinois law recognizes that. Let me let me ask you this so that I'm clear your argument regarding Jackson's testimony is centered around the leniency that he received that suggests that he would identify the defendant to save himself. Was Jackson ever implicated as being the shooter in this case? No, not necessarily. And and so as Justice Burkett was indicating the victim and Milton said the shooters wore the red jacket. You have a photo of the defendant wearing the red jacket with the in the sweater. So Jackson's testimony is corroborated by all these significant facts, are they not? There are. Well, the the gun was found before and after none of the no one described it as an Indiana University sweatshirt. If you look at the pictures, it's a several witnesses described it as either red and orange or red or yellow. But I mean, it's clear from the photos it's just a plain red sweatshirt with a big white Indiana University logo. Again, it was multiple descriptions as to the race of the shooter versus the race of my client. And. The victim, he was face to face with the shooter immediately before him, and he failed to identify him with the standard review here that we have. How can you say that rational trier effect could not have found Jackson's ID an essential element in finding the crime, the defendant guilty of the crime beyond a reasonable doubt? My argument, our argument would be that in light of all the inconsistencies of the identification of the shooter and also in light of the fact that Illinois recognizes that. I'm making reference to Jackson's ID. Well, his testimony, he never identified my client specifically as the shooter. He just said he had the gun. He also admitted that he was probably smoothing things over when he was talking to police and when we was talking to investigators. And again, he received an extremely lenient sentence. Not only did was he tried as a juvenile on this matter, but he had child pornography charges dropped. He had an again, he. He he's the only one of this of this group that sort of had a motive to commit the offense. He had a history with the victim and the victim's family. There was no statements made by my client. There was no clear motive. For my client to commit this offense. So what was there any serious flaws in Jackson's testimony that would suggest that the jury should have disregarded it in whole cloth? He did admit that he was probably smoothing things over and I. He said, based on my reading of the record, it suggests that he was telling the police what he wanted to hear. That he gave some indications that he really was just wanted to go home. Mr. Mellon, if I can interject, you're well aware of the fact that the case law is well settled that when in a jury trial, it is the jury's province to determine the credibility of the witnesses and the weight of the evidence. Would you agree with that? Yes, your honor. Right. And further that we can just take this back step for a moment. I'm sorry. You're arguing, I think, in essence, that Jackson's testimony you believe is essentially uncorroborated, although it's justices Bridges and Burkett aptly pointed out. There is certainly physical evidence corroborating that, but I want you to hone in on a holding by the United by the Illinois Supreme Court in People versus Tenney. It was decided in 2002. In that case, the Supreme Court said specifically, they acknowledge that while the accomplice testimony has weaknesses and should be accepted with suspicion and caution, they went on to hold an accomplices testimony, whether corroborated or uncorroborated is sufficient. If it convinces a jury of the defendant's guilt beyond a reasonable doubt, that's the holding of the case. So how do you square that with your argument here that it needs to be corroborated? I don't read that case as saying that. Again, I would just point to the fact that no one, no one else identified my client. And the corroboration here is he had the gun, perhaps before and after the offenses. And the shirt matched, according to the evidence. The shirt matched the picture. I don't know if the shirt matched the descriptions that was given by the witnesses who saw it. And again, I mean, we point your honors pointed out that it was dark, but apparently they could see the color of the sweatshirt or some sort of vague description of the sweatshirt. So likewise, you would think they'd be able to identify my client. And the failure of the victim to identify him out of the array, I think is a key fact. Other case law, and you've done, I'll concede you've done a good job of pointing out the inconsistencies in the various descriptions given by the victim. But is there any case law that says that in the absence of the victim himself or herself, positively identifying the defendant, the conviction cannot stand? Do you have any case law that says? No, I don't think there's case law that says that specifically, but I think in any sort of reasonable doubt case, it's important just to look in the look at the accomplished testimony in the context of the evidence as a whole. And that's the jury's role, isn't it? Not ours? Yes. Well, I mean, yes, your honor. But I mean, as you know, case law holds that this court obviously can find that the jury, no rational jury could have found that the evidence was sufficient in this case. But we maintain that in light of the shifting identification and, or the inconsistent identifications, and this witness was so problematic, and the deal was quite lenient. He must be looked at with skepticism, he should be looked at with skepticism. Before you run out of time, I think this is important. You started your argument, honing in on the accomplished instruction. Yes. And I think did a good job of pointing that out. That's certainly an issue to be seriously looked at. But how does that what about the doctrine of harmless error? I mean, if the evidence we would have found would be overwhelming, the defendant, you know, was in fact involved, he was the shooter. Doesn't that isn't harmless error applicable here? Well, I think as I've just argued that evidence in this case was hardly overwhelming. I mean, we definitely just rehash the evidence. But there's all these inconsistencies in the descriptions of the offender. No one else in this case identified my client as the shooter. Right. But my question is, would harmless error would still theoretically apply to this issue? On the instruction, correct? Absolutely not. I would say that this is absolutely not harmless beyond a reasonable doubt. I it seems to me what happened in this case is the state presented its evidence, it realized the weakness of its case. And almost at the very last minute, that's when they asked for the accountability instruction. Then, not until they get to rebuttal argument, they finally they tell the jury, oh, by the way, you guys can also find that the client that my client actually handed off the gun to Jackson. And you can still find him guilty if Jackson was the shooter. This with error was not harmless beyond a reasonable doubt, because it let the jury deliberate on this entirely speculative theory. There wasn't a single piece of competent evidence that ever suggested that that's what occurred. So that the harm here was because the evidence that the that my client was the principal was weak. I mean, perhaps submission, but definitely not overwhelming. Again, there was no competent evidence supporting an accountability theory. Counsel, there wasn't any interrogatory given here to give the jury an opportunity to determine if they were finding the defending guilty as either the principal or an accomplice. No, your honor. No, your honor. To which I'd suggest it's likely if not probable that based on this evidence where no one identified my client as the shooter is a very good chance that they did convict him based on the theory that okay, maybe he gave the gun to Jackson, or maybe he gave the gun to one of the other clients, or one of the other individuals over there. There's no dispute that the gun was in his possession the night of the shooting. Correct. The night of the shooting. I don't think that was established at trial. What about the photographs taken from cell phone Jackson cell phone, which clearly show the defendant in possession of the firearm? I believe that was before the shooting. So I don't know if the night of the shooting, like after the shooting occurred, if that was established that he had the gun in his possession. What we do know is he had the gun 11 days later when he executed the warrant. Wasn't Jackson's testimony that the photographs were taken that night? If I remember correctly, well, I think he was sort of unclear as to when he couldn't remember. I think he was he had too much to drink or he wasn't clear in his testimony as to when the photographs were taken. I believe that the photographs I'd have to I believe the photographs were established that they were taken before the shooting. So he has the gun before and after. There's no dispute about that. Yes, sir. Well, he has the gun in the sense that he's in possession of it in the photograph. And then he also has the gun. He does have it and they executed the search warrant at his apartment. I want to thank you, counsel. Does either of the justices have any additional questions? I do not. Thank you very much. We will call on you again for your rebuttal after the appellee's argument. Ms. Joseph, would you begin your argument? Good morning, Your Honors. Victoria Joseph for the people of the state of Illinois. May it please the court, counsel. The people maintain that even without Jackson's testimony, the identification here was proven circumstantially. Jackson's testimony was kind of the cherry on top of the ice cream sundae of evidence that the defendant shot the victim in this case. As Your Honors have pointed out, we have photos of the defendant with the gun and the accomplices wearing the red sweatshirt near in time to the offense. To clarify your question, Justice Burkett, Jackson's testimony and previous statements varied at the time of day those photographs were taken. At some point, he said they were taken that morning, that day, or it could have been the day before. But they were all near in time to the offense. All of the witnesses consistently identified the shooter wearing a red sweatshirt or jacket, including Jackson. The gun that fired the bullet found in the victim's body and matched the casing found at the scene was wrapped in the red sweatshirt that we saw the defendant wearing in the photos shortly in time to the shooting and was found in his possession. The victim identified Jackson at the scene because his brother knew Jackson and the brother and Jackson were approximately the same age. We know that the victim specifically identified Jackson there and said that he was not the shooter. That is not the same thing as being unable to pick out a photograph of someone you don't know and say this is the shooter. So his failure to pick out the photo in the photo array is not the equivalent to saying he was not the shooter. He didn't point any pictures and say this person didn't shoot me. He was just unable to make the identification. And when we add in Jackson's testimony, it was sufficiently corroborated to lend credence to his testimony. Let me ask you this. Does he accomplish his testimony as a matter of law have to be corroborated? No, it does not, Your Honor. As Your Honor pointed out in Tunney, it can be corroborated or uncorroborated. We would maintain in this case it was corroborated, but the court looks to the record as a whole to see if one can reasonably accept his testimony. And looking at the record as a whole, it can be accepted. He had the same details of the offense describing he may not have ever said the defendant shot the victim, but he said the shooter's name was Alex. He had a neck tattoo, was muscular, stocky build, and was wearing the red shirt, pointed out the red shirt in the photographs, and that he was a Puerto Rican male. So we, the jury could observe Jackson testifying, they could observe him on the video, and they were aware of any hesitancy he had indirectly saying the defendant is the shooter. But all of his statements identify the defendant as the shooter. Let me, Ms. Joseph, let me ask you this. Jackson's statements to the detective when they interviewed him about his fear of going back to jail, trying to help himself out, and that he was trying to find a way to go home. Why isn't this analogous to Ash, the Ash case where the accomplice testimony, where he basically said he would do anything to avoid jail? Well, I don't know whether the jury had video of the accomplice making such statements, but in here the jury did see the actual identification of the defendant in the photo array, and the jury could look at the manner in which the, which Jackson was both testifying and the manner in which he was behaving in the video, and make those credibility, and the weight to give his testimony. Those were decisions with which the jury could make. But you do agree there was inconsistencies in his trial testimony and the statements that he had given to the detectives, and actually also what he said in juvenile court. That is correct, Your Honor, and all of that was presented to the jury. Again, it was their determination to weigh all of those inconsistencies, to weigh the leniency that they knew about, and make their decision accordingly. Again, they're also looking at all of the evidence and just as you were to see, can we accept his testimony against everything else too? But he did know the very details that the victim, like I said, the victim described a very similar person as Jackson described, and it was up to the jury to make that determination. And Your Honors are looking at the entire court record to see if the jury could reasonably accept that testimony, along with the fact that the jury was in the position to observe the witnesses. Mr. Joseph, if we could shift gears for a second, and if I could ask you to specifically address Mr. Mellon's argument regarding the propriety of the accomplished instruction in this case. He seems to be arguing that the evidence that the defendant was the principal in the case was the shooter is weak, and that accountability instruction was thrown out to improperly bolster the weakness in the state's theory that the defendant was the shooter. So how do you respond to that argument? Well, Your Honor, we don't concede that the evidence was weak on the principle. As we addressed in our first argument, but we're looking at the case law here says that as long as there is slight evidence of accountability or any situation, we're always looking for was there slight evidence. And the instruction should only be given when the defendant is clearly the And what is the evidence that he might have been the defendant might have been the accessory in this case? Well, here we we have from the openings. We have the fact that the defendant never in any argument or presentation denied that he was there at the scene. All of his argument was that there is no evidence to suggest that he was actually the shooter. So we do have evidence that two people approached the victim that was both from the victim himself and Melton. They both saw two people approach the victim. Yes, they all agreed that the person in the red sweatshirt is the one who did the shooting. Neither could identify that was the defendant. We also have the admission that Jackson may be lying to ID. No one ID the shooter that Jackson was lying. Again, in the opening statement from the defense, we have pointing to Jackson is actually matching the description that a young black male shot the we have this group of three people together during the day. We have. Yes, let me ask you. This is a follow up to Justice Hudson Hudson's question. This because the accountability is the issue defenses put forth and made seemingly the most argument. So the mere fact that since he had turned his back, you it's your position is evidence. The defendant who held a gun before Jackson turned before Jackson turned around, may have given a gun to acquire and he then shot the victim. That's the sole basis of your argument for the accountability instruction. And that even if that is the basis, your honor, that is all that's needed, because that is the slight evidence that permits the instruction. And when you have evidence that there is a principle and there's an evidence that the person is assisting, both instructions may be given. Joseph taking that door, but isn't the giving of this accountability instruction similar to the instruction given in people versus Williams, where it was found to be highly speculative? I don't believe so, your honor. The if I believe correctly in Williams, that was the case where it was that the one where he was the only person seen, I believe. And yes, he was the single gunman. There was only one person that was at the scene. The defendant argued he did not conspire with the others and was misidentified as the shooter. And that was the one that they found the accountability instruction was error and would have been more appropriate for the other two people involved than for the defendant. Here, we don't have a single gunman at this. We don't have a single assailant at the scene. And that is why it is closer to bachelor where we have two people that could have been the shooter who were with who were with the victim at the time. And to the extent that no one could identify which one was the one who shot with the positive identification that this is the person under the low standard of an instruction, it is sufficient. Joseph, and we could take this to the next level. If we were to conclude, let's say we were to conclude that the accountability instruction was improper improperly given with the doctrine of harmless error applies when the jury could have convicted the defendant on the theory could not have convicted the defendant on the theory he was accountable for the action of the others because there was sufficient evidence that he acted as the principal. And here we have sufficient evidence that the defendant acted as the principal. Therefore, any error in instructing be harmless. Are there any other questions from your honors this morning? Does either other justice have any additional questions? I do not. Again, we maintain the evidence was sufficient to support the conviction. The instruction was given based on even slight evidence that they're the defendant was accountable to the actions of and that any instructional error was harmless in light of the evidence. Thank you. We ask you to affirm. Thank you, counsel. Counsel, you may begin your rebuttal. Thank you very much. Just very briefly, if I may just address the accountability matter. The standard is not just mere association with people who commit an offense. Again, there's got to be evidence, not only that the client committed or aided, abetted, agreed or attempted to aid another person, but that that the defendant, in order to be accountable, has to have a specific intent to commit the offense at issue. And we don't have anything with that. And again, I mean, there's obviously I'm sorry. Okay. Obviously, there's an inherent inconsistency in that we argument one, the state is proceeding on the theory that the evidence was overwhelming, that he's the principal. Meanwhile, in argument two, the state suggests that but we also have evidence that he was accountable. The standard is again, there's got to be evidence that he intended and there's got to be evidence that he committed an act to further this offense and there was presented here. As to the harmlessness, I would ask this court to find that they were able to lessen the burden of proof because they gave the jury an out where they the evidence was weak. There was not a single statement made by my client. Typically, in accountability cases, accountability cases, you'll have some statements by the defendant in order to find them accountable. In here, we had no statements by my client, that he knew what was going to happen. There's no statements that he intended for this to happen. The jury was able to deliberate on mere inferences without any sort of competent evidence. And due to the fact the evidence was so weak, or at least not overwhelming as to him being the principal, we would ask this court to Mr. Mellon, if I could ask, on the issue of giving the accountability instruction, you've relied heavily on the case of people versus Williams. Would you agree or concede that that case as was pointed out, involve the case in which the evidence was overwhelmingly clear there was only one shooter period? Correct. And I but I do believe in that case, there were statements by the defendant. And I believe it was a inconsistency between, you know, what was what the focus was on, there was absolutely no evidence there that of accountability. And there was an inconsistency between finding accountability versus conspiracy theory, or conspiracy. But again, there was much greater evidence in that case than we have here. Once again, we have no single positive identification as my client is the shooter. His conviction largely rested on the testimony of an accomplice witness. And we have all the inconsistent descriptions of my client is the shooter, this must have all been in the jury's mind when they were deliberating. And they, they must have thought that, well, if they didn't prove he's the shooter, at least we can find that he was there. And he had the gun, so someone shot him. So I guess we can find him guilty on accountability. But because of the way the evidence was presented at trial, the instruction should have never been given in the first place. So if your honors have no more further questions, we would submit this case for your consideration. Does either justice have any additional questions? Nor do I. So the court at this time, thanks both parties for their arguments here this morning, the case will be taken under advisement and a disposition will be rendered in due course. Mr. Kirk, you may close the case and terminate these proceedings. Yes, sir. Thank you.